## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

RADFORD MAYBERY,       )
                        )
         Petitioner,     )
                        )
vs.                    )     **Case No. 11-CV-166-GKF-PJC**
                        )
ROBERT PATTON, Director,[1]  )
                        )
         Respondent.    )

### OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1), filed by Petitioner Radford Maybery,[2] a state prisoner appearing pro se. Respondent filed a response (Dkt. # 10) and provided the state court records (Dkt. ## 12, 13) necessary for the adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 14). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

Petitioner was charged by Information in Tulsa County District Court, Case No. CF-2007-1338. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the filings, trial transcripts, and other materials submitted by the

---

[1]Since Petitioner is currently incarcerated at a private prison, the proper respondent in this case is Robert Patton, Director of the Oklahoma Department of Corrections. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Robert Patton, Director, in place of Robert Ezell, Warden, as party respondent in this matter.

[2]The Court recognizes that Petitioner signs his name "Mabery" on both the petition (Dkt. # 1 at 13) and the reply brief (Dkt. # 14 at 5). Yet, Petitioner captioned his petition with the spelling of his name as "Maybery." (Dkt. # 1 at 1). "Maybery" is also the spelling as it appears in the state court record, with the exception of Petitioner's direct appeal brief. The Court will use the spelling of Petitioner's name as it appears in the caption of the petition.

parties, the Court finds the summary by the Oklahoma Court of Criminal Appeals (OCCA), as set forth below, is adequate and accurate.   Therefore, the Court adopts this summary as its own. Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the court's analysis.

Shortly after midnight on the morning of August 5, 2005, Alfred Sumner left the apartment he shared with his wife and drove his cab, his only means of transportation, to a garage apartment he used as a makeshift music studio.  Sumner's wife would later remember that when he left he had his driver's license, a debit card, at least $300 in cash, and two rocks of crack cocaine.  She testified that she had had several phone conversations with him during the early morning hours, the last occurring at about 4:30 a.m.

Sometime during the evening of August 4th or the morning of August 5th, Radford Maybery was dropped off at his aunt's house, located across the street from Sumner's garage apartment.

Between 4:45 and 5:00 a.m. a man walking his dog on East Jasper spotted Sumner's cab. It was parked approximately thirty-five feet away from the house of Joyce Maybery, Radford's sister.  At some point after 4:30 a.m. Radford Maybery knocked on his sister's door. When she let him in, he went straight into the bathroom. Later Maybery and Joyce went to the liquor store.  On the way back from that errand Maybery jumped out of the vehicle.

Around 11:00 a.m. on August 5th, Officer Smith of the Tulsa Police Department responded to a "well-being" call at Sumner's garage apartment, at 843 1/2 North Birmingham Place in Tulsa. After knocking on the front door for approximately ten minutes, Officer Smith and two other officers opened the door and saw couch cushions on the floor, blood spatter on the walls, and pools of blood on the floor. Moving through the house they discovered Sumner's body in the kitchen. His driver's license was under a nearby chair. No debit card, cash, or crack cocaine were recovered. Detectives took several items from the apartment for DNA analysis, including several cigarette butts.

Shortly after 4:00 p.m. the same day police received a call about Sumner's cab parked on East Jasper.  Because police had discovered that Maybery's aunt lived across the street from Sumner and Maybery's sister lived near the place where Sumner's cab was found, police interviewed Joyce.  Learning Maybery had been at her residence early that morning they asked permission to search the house. The search included an outside trash can wherein police found a bag containing, among other things, a box inside a bag. Inside the box was a key stamped 609, Sumner's cab number. That key started Sumner's abandoned cab.

The next day, August 6, Maybery, impersonating Sumner, attempted to use Western Union to transfer money to a Terence Hyche. His attempt was rejected by

the bank because there were insufficient funds in Sumner's checking account. A second attempt to transfer money was blocked as a suspicious transaction by Western Union because Maybery was attempting to wire money from Tulsa to Tulsa, and because he was using a payphone. Maybery then used Sumner's debit card to purchase two will-call Greyhound tickets from Tulsa to Los Angeles for himself and Hyche under an alias. During the trip Maybery used Sumner's debit card to make purchases in Tulsa, Oklahoma City, Albuquerque, Phoenix, and Los Angeles.

The autopsy done on Sumner's body showed he was stabbed three times; the fatal wound severed the carotid artery causing Sumner to bleed to death.  Tests showed Sumner had a 0.1% blood alcohol content and no trace of cocaine in his system. Using the DNA of Maybery's biological parents, the police were able to identify Maybery and obtain an arrest warrant. After Maybery was extradited from California to Oklahoma, police obtained a DNA sample from Mayberry that linked him to the cigarette butts found at Sumner's garage apartment on August 5, 2005.

While in jail awaiting trial Maybery spoke to a fellow inmate. He confessed to killing a taxi driver and taking his debit card and cab. Maybery also related he had changed clothes and thrown away the key to the cab at his sister's house.

(Dkt. # 10-4 at 1-4).

Based on these facts, Petitioner was charged in Tulsa County District Court Case No. CF-2007-1338 with Murder - First Degree (Count I), Taking of a Debit Card (Count II), and Identity Theft (Count III).  (Dkt. # 12-11, O.R. at 1-2).  On March 14, 2008, a jury found Petitioner guilty on all counts and recommended a sentence of Life Without Parole for Count I and terms of imprisonment of ten (10) years for both Counts II and Count III.  Id. at 12.  On March 24, 2008, the trial court sentenced Petitioner in accordance with the jury's recommendation, with the sentences ordered to be served consecutively.  Id.  At trial, Petitioner was represented by attorney Richard Couch.

Petitioner, represented by attorney Stuart W. Southerland, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA).  He raised eight (8) propositions of error:

Proposition I:     In light of the change in jury instructions regarding circumstantial evidence, it was error to refuse Appellant's request for an instruction defining reasonable doubt.

3

Proposition II:      The jury should have been instructed to give separate consideration to each of the charged offenses.

Proposition III:      The jury should have been instructed to sentence Appellant to First Degree Murder in Count I in the first stage, before finding out that Appellant had a prior felony conviction.

Proposition IV:      Permitting the jury to repeatedly view the videotaped statement that Appellant gave to police violated his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution, as well as relevant provisions of Oklahoma law.

Proposition V:      The State should have been required to elect between Counts II and III.  A conviction in both counts violates 21 O.S.2001, § 11, as well as the Fifth and Fourteenth Amendments to the United States Constitution.  Count III should be reversed with instructions to dismiss.

Proposition VI:      The admission of improper opinion testimony by detective Chris Stout served to undermine Appellant's right to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Proposition VII:      Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Proposition VIII:      The combined effect of the errors at Appellant's trial requires reversal or modification.

(Dkt. # 10-1).  In an unpublished Opinion, filed March 29, 2010, in Case No. F-2008-298, the OCCA affirmed the Judgment and Sentence of the district court.  (Dkt. # 10-4).

On March 21, 2011, Petitioner filed his pro se petition for writ of habeas corpus.  (Dkt. # 1). Petitioner describes his six (6) grounds of error as follows:

Ground I:      Reasonable doubt instruction.

Ground II:      Independent consideration of offenses instruction.

Ground III:      Sentencing proceeding.

4

Ground IV:     Maybery's videotaped statement.

Ground V:      Same offense.

Ground VI:     Ineffective assistance of counsel.

(Dkt. # 1).  Respondent contends that the OCCA's decisions on Grounds I, V, and VI are not

contrary to or an unreasonable application of federal law, and that Grounds II, III, and IV are matters

of state law not cognizable on federal habeas review.  (Dkt. # 10).  In his reply (Dkt. # 14), Petitioner

restates all arguments raised in his petition.

### *ANALYSIS*

#### A.     **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner

presented his claims to the OCCA on direct appeal.  Therefore, he has exhausted his state court

remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not

met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S.

420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

#### B.     **Constitutional claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

5

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

Pro se pleadings are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  While Petitioner does not couch all of his habeas claims in constitutional terms, Respondent frames Petitioner's claims, provides the relevant documents necessary for an adjudication under § 2254(d), and responds accordingly.  (Dkt. # 10).

### 1.      Reasonable doubt instruction (Ground I)

In Ground I, Petitioner alleges that the trial court erred in failing to give his requested "reasonable doubt instruction" to the jury.[3]  (Dkt. # 1 at 4; Dkt. # 10-1 at 7).  Petitioner argues that

---

[3]Petitioner requested the following two jury instructions:
 (1) Presumption of Innocence Burden of Proof - Reasonable Doubt
         The indictment or formal charge against the defendant is not evidence of guilt.  Indeed, the defendant is presumed by the law to be innocent.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.
         While the government's burden of proof is a strict or heavy burden, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.  A

"[t]he [United States Supreme] Court did not rule that the absence of a reasonable doubt definition, when a 'reasonable hypothesis' instruction concerning circumstantial evidence has also been excluded, would pass Constitutional muster." (Dkt. # 1 at 4).  On direct appeal, Petitioner argued that the OCCA's decision in Easlick v. State, 90 P.3d 556 (Okla. Crim. App. 2004), requires the trial court to give an instruction defining reasonable doubt.[4]  (Dkt. # 10-1 at 8-10; see also Dkt. # 10 at 7).  The OCCA stated that it has "consistently rejected this claim in other cases" and "disapprove[s] of attempts by the trial court to define reasonable doubt for the jury." (Dkt. # 10-4 at 4 (quoting Harris v. State, 84 P.3d 731, 750-52 (Okla. Crim. App. 2004))).  Respondent argues that "the U.S.

---

reasonable doubt is a doubt based on reason and common sense.  It may arise from the evidence, the lack of evidence, or the nature of the evidence.
    Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it making the most important decisions in your own lives.

(2) Burden of Proof - Reasonable Doubt
    Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty.  If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

(Dkt. # 12-11, O.R. at 177-78).

[4]In Easlick, the OCCA abolished its use of the "reasonable hypothesis" test, in favor of the test articulated in Spuehler v. State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985). The OCCA stated that the "reasonable hypothesis" test was based on antiquated ideas concerning the value of circumstantial evidence.  Easlick, 90 P.3d at 559.  The OCCA, pursuant to Holland v. United States, 348 U.S. 121, 139-140 (1954), stated that "if a proper reasonable doubt instruction is given, a jury need not be instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt."  Easlick, 90 P.3d at 558.  The OCCA held that it will "review sufficiency of the evidence issues under the Spuehler standard, regardless of whether the evidence is wholly circumstantial or whether it is based in whole or in part on direct evidence. Id. at 559.

7

Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so." (Dkt. # 10 at 7). Thus, Respondent argues, the "OCCA's decision to follow its longstanding precedent disallowing definitions of reasonable doubt was neither contrary to, nor an unreasonable application or, federal law." Id. at 9.

This issue has been addressed by the United States Supreme Court in Victor v. Nebraska, 511 U.S. 1, 5 (1994), as follows:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Cf. Hopt v.Utah, 120 U.S. 430, 440-441, 7 S. Ct. 614, 618-20, 30 L. Ed. 708 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see Jackson v. Virginia, 443 U.S. 307, 320 n.14, 99 S. Ct. 2781, 2789, n.14, 61 L. Ed. 2d 560 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

Victor, 511 U.S. at 5. Here, the court instructed the jury, several times, on the need to determine Petitioner's guilt beyond a reasonable doubt. In Jury Instruction No. 4, the court instructed that, "[t]he defendant is presumed innocent of the crime charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes guilt beyond a reasonable doubt." (Dkt. # 12-10 at 190). Additionally, in the jury instructions for each of the crimes charged, the court instructed that, "[n]o person may be convicted of [the crime charged] unless the State has proved beyond a reasonable doubt each element of the crime." Id. at 214, 218, 219.

Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as interpreted by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the

evidence presented at trial.  28 U.S.C. § 2254(d)(1),(2).  Nothing provided by Petitioner suggests that there is a reasonable likelihood that his jury was misled or understood their instructions to allow conviction based on proof insufficient to meet the constitutional requirement of "reasonable doubt." Therefore, Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's decision not to instruct the jury as requested by Petitioner nor is the OCCA's decision contrary to, or an unreasonable application of, federal law as interpreted by the Supreme Court.  Petitioner is not entitled to habeas corpus relief under § 2254(d) on Ground I.

### 2.      Double jeopardy (Ground V)

In Ground V, Petitioner claims that the charges of Taking of a Debit Card and Identity Theft, should have been tried in a separate trial and that his convictions on the two crimes violate the constitutional protection against double jeopardy.  (Dkt. # 1 at 10).  Petitioner argues that "[t]o try crimes that are separate and distinct is highly prejudicial to a fair trial."  Id.  On direct appeal, Petitioner argued that his conviction of the two crimes violated the Oklahoma Constitution, OKLA. STAT. tit. 21, § 11, and the United States Constitution.  (Dkt. # 10-1 at 23).  The OCCA analyzed Petitioner's claim under both state and federal law.  First, the court concluded that the convictions for both crimes "are the result of separate and distinct acts that require dissimilar proof."  (Dkt. # 10-4 at 9-10).  Therefore, the convictions do not violate Oklahoma law.  Id. at 10.  Then, the OCCA found that the convictions do not "violate constitutional prohibitions against double jeopardy."  Id. Applying the test set forth by the Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932), the OCCA concluded that, because the two offenses contained an element which the other did not, Petitioner's conviction does not "offend . . . [the] Federal constitutional prohibition against double jeopardy."  Id.  Respondent argues that, "to the extent that [P]etitioner's claim is premised

9

on Okla. Stat. tit. 21, § 11, it raises an issue of state law not cognizable on federal habeas review." (Dkt. # 10 at 17).    Respondent also argues that the OCCA's decision was not "contrary to nor an unreasonable application of federal law." Id. at 20.

The Court finds that, to the extent Petitioner claims that he was convicted in violation of the laws of Oklahoma or the Oklahoma Constitution, his claim is not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions).  Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This amendment is intended to prevent a defendant from receiving successive punishments or being subjected to successive prosecutions for the same offense.  United States v. Dixon, 509 U.S. 688, 704 (1993). In Blockburger, the Supreme Court explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304 (citing Gavieres v. United States, 220 U.S. 338, 342 (1911)).  "The Court has recognized that 'the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence

10

to be presented at trial.'"  <u>United States v. Benoit</u>, 713 F.3d 1, 12-13 (10th Cir. 2013) (quoting

<u>Illinois v. Vitale</u>, 447 U.S. 410, 416 (1980)).

      The relevant Oklahoma statues are OKLA. STAT. tit. 21, § 1550.22 and OKLA. STAT. tit. 21,

§ 1533.1.  Under OKLA. STAT. tit. 21, § 1550.22(a) (defining the crime of Taking Credit Card or

Debit Card), "[a] person who takes a credit card or debit card from the person, possession, custody

or control of another without the cardholder's consent . . . is guilty of card theft."  Under OKLA.

STAT. tit. 21, § 1533.1(a) (defining Identity Theft),

> [i]t is unlawful for any person to willfully and with fraudulent intent obtain the name,
> address, . . . debit, credit or account numbers, . . . or any other personal identifying
> information or another person, living or dead, with intent to use, sell . . . such personal
> identifying information to obtain or attempt to obtain money, credit, goods, property,
> or service in the name of the person without the consent of that person.

The jury was instructed in accordance with these statutes as to the elements of the crimes.  <u>See</u> Dkt.

# 12-10, O.R. at 218-219.

      Under the <u>Blockburger</u> test, the State was required to prove that Petitioner had possession

of Sumner's card without Sumner's consent in order to establish that Petitioner was guilty of Taking

of a Debit Card.  In contrast, the State was required to prove that Petitioner used Sumner's personal

information to obtain or attempt to obtain money, credit, goods, property or services in Sumner's

name without Sumner's consent in order to establish that Petitioner was guilty of Identity Theft.

Stated another way, proof of Identity Theft did not require possession of the debit card itself, whereas

proof of Taking of a Debit Card required possession of the actual card.  Moreover, proof of taking

a debit card did not require a showing of intent to use or sell personal identifying information to

obtain money, credit, goods, property or services without consent.  Each statute requires proof of a

fact which the other does not.  <u>Blockburger</u>, 284 U.S. at 304.

Therefore, after a review of the record, the Court concludes that Petitioner's convictions of both Taking of a Debit Card and Identity Theft did not violate the Double Jeopardy Clause of the United States Constitution.   The OCCA's decision was not contrary to, nor an unreasonable application of, federal law as interpreted by the Supreme Court.   Therefore, Petitioner is denied habeas relief on Ground V.

### 3.   Ineffective assistance of trial counsel (Ground VI)

In Ground VI, Petitioner claims that the "outcome of the trial would have been different," but for ineffective assistance of trial counsel. (Dkt. # 1 at 11).  Petitioner argues, as he did on direct appeal, that "a number of issues in this brief will be reviewed using the 'plain error' standard of review on appeal as a direct result of defense counsel's failure to object or otherwise properly preserve a record for appeal." (Dkt. # 1 at 11).  Respondent argues that the "decision of the OCCA rejecting the petitioner's ineffective assistance of counsel claim is neither contrary to nor an unreasonable application of federal law." (Dkt. # 10 at 20).

In his direct appeal brief, Petitioner identified four claims of ineffective assistance of counsel, as follows:

> 1.) As argued in Appellant's second proposition of error, defense counsel failed to request a modified version of OUJI-CR 2d 9-6, which provided that the jury was to give separate consideration of each offense.  This encouraged the jury to convict Appellant of first degree murder in Count I because they believed that he had stolen the victim's debit card as alleged in Count II.

> 2.) As argued in Appellant's third proposition of error, defense counsel failed to object to the court's decision to wait until the second stage to instruct as to the punishment for first degree murder.  There was no strategic reason for counsel to permit the jury to wait until they found out that Appellant had been previously convicted of a felony before deciding between life and life without possibility of parole as a penalty for first degree murder.

3.) As argued in Appellant's fourth proposition of error, defense counsel failed to object to the jury having a videotape of Radford Mabery's statement to the police available for repeated viewings.

4.) As argued in Appellant's sixth proposition of error, defense counsel failed to object to the use of Detective Stout as an expert witness who offered his opinion that it was Radford Mabery pretending to be Alfred Sumner on the Western Union [audio] tape.

(Dkt. # 10-1 at 34-35). Petitioner requested that the OCCA "consider ineffective assistance of counsel as an alternative theory to plain error when defense counsel fails to lodge a proper objection." Id. at 35. The OCCA reviewed each of the four claims under the two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984) (requiring a defendant to show that his counsel's performance was deficient and that the deficient performance was prejudicial), and found that Petitioner had failed to satisfy the prejudice prong as to each claim.

To be entitled to habeas relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim is contrary to, or an unreasonable application of, Strickland. On habeas review, a federal court does not ask "whether defense counsel's performance fell below Strickland's standards." Richter, 131 S. Ct. at 785. Instead, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (quoting Williams v. Taylor, 529 U.S. 364, 410 (2000) (O'Connor, J. concurring)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."

13

Id. at 786.   Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."  Id.

"The two-pronged test established in Strickland[], determines whether defendant's counsel was ineffective."  Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687–88.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 688. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential."  Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

14

In this habeas action, Petitioner fails to offer any argument that the OCCA's adjudication of his ineffective assistance of counsel claim is contrary to, or an unreasonable application of, Strickland. Petitioner simply restates a short portion of his direct appeal brief. Nonetheless, the Court will apply the 28 U.S.C. § 2254(d) standard to determine whether Petitioner is entitled to habeas corpus relief based on the OCCA's adjudication of his claims. As his first claim of ineffective assistance of counsel, Petitioner complains that his attorney failed to object to the modified jury instruction regarding "independent consideration of the offenses," as given by the trial court. The trial court modified several jury instructions to address the concerns raised by Petitioner's trial counsel in the requested instructions. The OCCA concluded that these modified instructions "adequately stated the law . . . [and Petitioner's requested instruction] would have added nothing to the jury instructions given." (Dkt. # 10-4 at 12). As discussed below, Petitioner was not denied due process as a result of the exclusion of the requested instruction. See infra C.1. Petitioner has failed to show that counsel's performance was deficient, nor has Petitioner shown he was prejudiced by counsel's failure to object. The Court finds that the OCCA did not unreasonably apply Strickland.

As his second claim of ineffective assistance, Petitioner complains that trial counsel failed to object to the trial court's decision to instruct the jury as to the punishment for the First Degree Murder at the same time the jury was considering Petitioner's prior conviction to enhance his sentences on Counts II and III. The Court again finds that the OCCA did not unreasonably apply Strickland. In Petitioner's direct appeal brief, he argued that Thompson v. State, F-2006-68 (unpublished) (Okla. Crim. App. May 22, 2007), and McCormick v. State, 845 P.2d 896 (Okla. Crim. App. 1993), stand for the proposition that a trial court cannot bifurcate the guilt/innocence and punishment stages of a non-capital murder case. (Dkt. # 10-1 at 18). However, the OCCA has also

15

found that even though "bifurcation is not authorized in first-degree murder trials where the State is not seeking the death penalty . . . this Court will not reverse a conviction or modify a sentence unless we find not only error, but some prejudicial effect resulting from that error." Carter v. State, 147 P.3d 243, 244 (Okla. Crim. App. 2006). Here, the OCCA stated that "assuming that it was error . . . , the error likely had no effect on the punishment for the murder count." (Dkt. # 10-4 at 6). The trial record demonstrates that Petitioner consulted with his counsel and that Petitioner agreed to have the punishment on all counts decided in the second stage. (Dkt. # 12-7, Tr. Vol. V at 883-84). Further, Petitioner fails to point to anything in the record, e.g., a note from the jury seeking clarification or demonstrating confusion, that shows the jury did not abide by the trial court's instructions regarding the sentencing of Petitioner for First Degree Murder. Petitioner fails to demonstrate a prejudicial effect resulting from the bifurcation. Therefore, Petitioner fails to show that the OCCA's decision as to the claim raised in Ground III is an unreasonable application of Strickland.

As his third claim, Petitioner alleges that counsel provided ineffective assistance when he failed to object to the videotape of Petitioner's statement to police being sent back with the jury during deliberations. The Court finds that the OCCA did not unreasonably apply Strickland in denying relief on this claim. As discussed below, see infra C.3, the record does not support Petitioner's assertions that the jury viewed the video "over and over again." (Dkt. # 1 at 9). The video was admitted as an exhibit and, under Oklahoma law, was allowed in the jury room during deliberations. Thus, any objection by defense counsel would likely have been overruled and Petitioner cannot show that the outcome of his trial would have been different. Therefore, because

16

Petitioner has failed to show that he was prejudiced by counsel's failure to object, the Court finds that the OCCA's application of <u>Strickland</u> was not unreasonable.

Finally, as his fourth claim, Petitioner argued on direct appeal that his counsel was ineffective for failing to object to the use of Detective Stout, of the Tulsa Police Department, as an expert witness to identify Petitioner's voice in the Western Union audio recording.[5]  (Dkt. # 10-1 at 35).

---

[5]Detective Stout's testimony was as follows:

Q:      . . . The first was at some point you obtained a recording from Western Union; is that correct?

A:      That is true.

Q:      And you have heard that recording multiple times, correct?

A:      Yes, I have.

Q:      And you interviewed the defendant as we have spoken with [sic] for more than an hour; is that correct?

A:      That's correct.

Q:      And you have heard – how many times have you listened to that particular statement do you think?

A:      A dozen.

Q:      Are you able to determine whether the voice on the Western Union recording is the same as that of the defendant in the interview and also in speaking with him?

A:      Yes, I believe it to be the same.

Q:      And during the interview you had with him, did he ever once mention that he had called Western Union?  Did he ever tell you that?

A:      He never mentioned that.

(Dkt. # 12-7, Tr. Vol. V at 761-62).

On direct appeal, Petitioner raised the admissibility of Detective Stout's testimony as a stand-alone proposition in Proposition VI, as well as an underlying issue to ineffective assistance of counsel in Proposition VII.  See Dkt. # 10-1.  The OCCA reviewed Proposition VI for plain error because counsel did not object at trial.  (Dkt. # 10-4 at 11).  The OCCA stated that Oklahoma law permits identification of a voice by a lay witness "when a foundation has been laid which establishes the witness's personal knowledge of the defendant's voice."  Id.  It found that "[t]he State laid a proper foundation for Stout's knowledge of [Petitioner's] voice and demonstrated how his opinion could be rationally based on his perception by eliciting his testimony about his lengthy interview of [Petitioner]."  Id.  Thus, the OCCA found that Stout's testimony was admissible.

As to the related claim of ineffective assistance of counsel raised in Proposition VII, the OCCA concluded that, "because Detective Stout's testimony was permissible as opinion testimony by a lay witness[, Petitioner] fails to demonstrate how counsel's failure to object to the testimony was either deficient or prejudicial."  Id. at 14.  After a review of the record, this Court finds that Petitioner has failed to show counsel's performance was deficient.  Based on Oklahoma law,[6] the testimony was properly admitted and Petitioner fails to show that trial counsel's objection would have barred the testimony.  Therefore, Petitioner has failed to show that, but for counsel's failure to

---

[6]Under Okla. Stat. tit. 12, § 2701, opinion testimony by lay witnesses is limited, as follows:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
1. Rationally based on the perception of the witness;
2. Helpful to a clear understanding of his testimony or the determination of a fact in issue; and
3. Not based on scientific, technical or other specialized knowledge within the scope of Section 2702 of this title.

object, the result of the proceeding would have been different and he has failed to show that the OCCA's decision was an unreasonable application of <u>Strickland</u>.

In summary, after a review of the record and the OCCA's direct appeal opinion, the Court concludes that the OCCA's decision is not contrary to, or an unreasonable application of, <u>Strickland</u>. Petitioner has failed to show that, but for counsel's failure to object to the four issues raised, there is a reasonable probability that the result of Petitioner's trial would have been different. <u>Strickland</u>, 466 U.S. at 694. Therefore, Petitioner has failed to show how he was prejudiced by counsel's failure to object. It is not possible that fairminded jurists could disagree that those arguments are inconsistent with the holdings of the Supreme Court. <u>Richter</u>, 131 S. Ct. at 786. Therefore, having failed to meet his burden under <u>Strickland</u>, Petitioner's request for habeas corpus relief is denied as to Ground VI.

**C.     State law claims (Grounds II, III, IV)**

**1. Improper instructions (Ground II)**

In Ground II, Petitioner claims that the jury should have received an "independent consideration of offenses instruction." (Dkt. # 1 at 6). The record reflects that Petitioner requested the following modified version of OUJI-CR (2d) 9-6:

> A separate crime is charged in each count of the Information. Each charge, and the evidence pertaining to it, should be considered separately by the jury. The fact that you may find a defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

<u>See</u> Dkt. # 12-11, O.R. at 182. The trial court declined to give the instruction as requested by Petitioner but did agree to modify OUJI-CR (2d) 10-15, the "Return of Verdict" instruction, by adding "and/or" in the first sentence listing the crimes charged. <u>See</u> Dkt. # 12-7, Tr. Vol. V at 728;

Dkt. # 12-10, O.R. at 221.  On direct appeal, the OCCA rejected Petitioner's claim that he was prejudiced by the omission of his requested instruction, stating that "[w]hile [Petitioner] initially requested that this modified instruction be given, he subsequently agreed to the trial court's modification of another instruction, and failed to object to the exclusion of his modified version of Instruction No. 9-6.  Review is for plain error only."  (Dkt. # 10-4 at 5).  After reviewing the jury instructions as a whole, the OCCA found no plain error.  Id.

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"  Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977))); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson, 431 U.S. at 155.  The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law."  Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)).  Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test.  Id. (citing 28 U.S.C. § 2254(d)).  A proceeding is fundamentally unfair under the Due Process

Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

After a review of the record, the Court finds the Petitioner was not denied due process or deprived of his fundamental right to a fair trial based on the trial court's decision not to give the requested instruction. The trial court modified OUJI-CR (2d) 10-15 by adding "and/or" to the list of crimes. See Dkt. # 12-7, Tr. Vol. V at 728; Dkt. # 12-10, O.R. at 221.[7] Petitioner accepted the trial court's modification of the instruction without objection. (Dkt. # 12-7, Tr. Vol. V at 728-29). Petitioner has failed to show that the trial court's refusal to give a separate "independent consideration of offenses" jury instruction, as requested, had the effect of rendering his trial fundamentally unfair. Habeas corpus relief is denied on Ground II.

## 2. Sentencing procedure (Ground III)

In Ground III, Petitioner claims that the trial court erred when it failed to give a First Degree Murder penalty instruction to the jury during the first stage of the trial because it "was not a death penalty case." (Dkt. # 1 at 7). Petitioner argues, as he did on direct appeal, that "[t]he jury must receive instruction on the penalty for first degree murder in the first stage of the trial. . . , before

---

[7]The modified instruction given to Petitioner's jury, Instruction No. 35, reads as follows:

If you find beyond a reasonable doubt that the defendant committed the crimes of Murder in the First Degree, Taking of a Debit Card **and/or** Identity Theft, you shall return a verdict of guilty by marking the Verdict Form appropriately. If you have a reasonable doubt of the defendant's guilt to the charges of Murder in the First Degree, Taking of a Debit Card **and/or** Identity Theft, or if you find that the State has failed to prove each element of Murder in the First Degree, Taking of a Debit Card **and/or** Identity Theft beyond a reasonable doubt, you shall return a verdict of not guilty by marking the Verdict From appropriately. The issue of punishment is not before you at this time.

See Dkt. # 12-10, O.R. at 221 (emphases added).

finding out about prior felony offenses offered for enhancement on other counts." Id.  On direct appeal, Petitioner cited Thompson v. State, F-2006-68 (Okla. Crim. App. May 27, 2007), an unpublished OCCA opinion.  (Dkt. # 10-1 at 18).  Petitioner argued that even though the "district court attempted to remedy the error by instructing the jury in the second stage that they were only to consider the prior [felony offense] as enhancement in Counts II and III[,] . . . the court was asking the jury to carry out an impossible task." Id. at 19.  Thus, Petitioner argued, "it is impossible to convincingly say that Appellant did not suffer prejudice." Id. The OCCA rejected Petitioner's argument on two fronts.  First, the OCCA found that Petitioner invited the error and "invited error cannot serve as the basis for reversal."  (Dkt. # 10-4 at 6).  In the alternative, the OCCA also found that "assuming that it was error . . . , the error likely had no effect on the punishment for the murder count." Id.  "The trial court instructed the jury that 'you **may not** consider nor may you permit the fact of him being convicted of a prior felony to weigh into your discussions or deliberations when deciding the issue of punishment for Murder.'" Id. (quoting Dkt. # 12-10, O.R. at 224).  The OCCA concluded that "[w]ithout any evidence that the jury did not follow this instruction, the alleged error cannot rise to the level of reversible plain error." Id. at 7.

Respondent argues that this claim is a matter of state law because Petitioner's sentence of Life Without Parole is within the proper statutory range.  (Dkt. # 10 at 13).  Further, Respondent argues that Petitioner "cannot show that the State's decision to uphold the sentencing procedure that took place in his case resulted in an excessive sentence, especially where the petitioner's jury was correctly instructed not to consider the Petitioner's conviction on a prior felony . . . when deciding the issue of punishment on Count 1." Id.

The OCCA applied its own invited error doctrine and reached the merits of Petitioner's claim. The Tenth Circuit has recognized Oklahoma's invited error doctrine as "a state procedural barrier to adjudication of the claim on the merits." Lott v. Trammell, 705 F.3d 1167, 1198-99 (10th Cir. 2013) (citing Sandoval v. Ulibarri, 548 F.3d 902, 912 (10th Cir. 2008)). The Tenth Circuit also noted that the invited error doctrine "is firmly established and regularly followed by the OCCA." Id. at 1199 (citing Pierce v. State, 786 P.2d 1255, 1259 (Okla. Crim. App. 1990) ("We have often recognized the well established principal [sic] that a defendant may not complain of error which he has invited, and that reversal cannot be predicated upon such error.") (additional citations omitted)); Parker v. Champion, 148 F.3d 1219, 1221-22 (10th Cir.1998)). Generally, a federal habeas court will not review a claim rejected by the state court on a state law ground that is independent of the federal question. Coleman v. Thompson, 501 U.S. 722, 729 (1991). Here, however, the OCCA reached the merits of Petitioner's claim, despite concluding that Petitioner invited the error.

Petitioner has failed to show that his trial was rendered fundamentally unfair as a result of the sentencing procedure. There is a general presumption that a jury follows a trial court's instructions. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (stating "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant" (internal citations omitted)); Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir.2001) (citing Weeks v. Angelone, 528 U.S. 225 (2000)). Though Petitioner claims that he was denied due process when the trial court failed to instruct the jury on the penalties for First Degree Murder during the first stage of trial, he fails to show that the jury improperly considered his prior felony in determining

their sentence recommendation for First Degree Murder during the second stage.  Thus, Petitioner

has failed to show that "his trial, as a whole, was rendered fundamentally unfair.'"  <u>Maes</u>, 46 F.3d

at 987.  Further, Petitioner's sentence falls within the statutory range.  <u>Dennis v. Poppel</u>, 222 F.3d

1245, 1258 (10th Cir. 2000) ("challenges to the decision are not generally constitutionally

cognizable, unless it is shown that the sentence imposed is outside the statutory limits or

unauthorized by law");  <u>Ewing v. California</u>, 538 U.S. 11, 21 (2003) (a sentence violates the Eighth

Amendment only if it is grossly disproportionate to the severity of the crime) (quotation omitted)).

Habeas corpus relief is denied on Ground III.

   3.   **Videotaped statement of Petitioner (Ground IV)**

   In Ground IV, Petitioner claims he was denied a fair trial because the jury was permitted to

view the videotape of the hour-long police interview "over and over again, during deliberations."

(Dkt. # 1 at 9).  On direct appeal, Petitioner conceded that in prior opinions, the OCCA had

"disagree[d] with the position taken in this proposition of error."  (Dkt. # 10-1 at 21 (citing <u>Pfaff v.</u>

<u>State</u>, 830 P.2d 193, 195-96 (Okla. Crim. App. 1992); <u>Duvall v. State</u>, 780 P.2d 1178 (Okla. Crim.

App. 1989))).  However, Petitioner requested that the OCCA revisit those holdings because the

videotaped interview was "testimonial in nature, and there is no reason to permit a jury to view

testimonial evidence, over and over again, during deliberations."  <u>Id.</u>  Petitioner urged the OCCA

to "apply the same law articulated in <u>Martin v. State</u>, 747 P.2d 316 (Okla. Crim. App. 1987), where

the OCCA "found error in the trial court's decision to allow jurors to review during deliberations,

the videotaped testimony of a child witness."  (Dkt. # 10-1 at 22-23).  The OCCA declined to revisit

those cases, and instead found that Petitioner's claim, that the jury repeatedly viewed the videotape

during deliberations, was "not supported by the record."  (Dkt. # 10-4 at 7).

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. at 67-68 (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)). "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)); Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (stating that habeas relief may be granted only if the evidence was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process"). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted).

Petitioner's Ground IV is not cognizable in this habeas corpus proceeding unless he demonstrates that the trial court's actions rendered his trial fundamentally unfair. The record confirms that the redacted videotape of Petitioner's police interview was admitted into evidence as State's Exhibit 109 and played for the jury in open court. See Dkt. # 12-6, Tr. Vol. IV at 720-21. In addition, at the conclusion of closing arguments, the trial court instructed the jury that they

"[would] be furnished a copy of the jury instructions" and "all of the evidence which was admitted during this trial." (Dkt. # 12-7, Tr. Vol. V at 878-79). The trial court instructed the jury that if they "wish[ed] to watch the [video of] the statement, you'll have to let us know so that we can provide you with the means to do so." Id. at 879. However, nothing in the record demonstrates that the jury requested a tape player in order to watch the videotape during deliberations. Thus, the record fails to support Petitioner's claim. Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair as a result of the jury's access to the videotape. Habeas corpus relief on Ground IV is denied.

**D.     Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority

suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.      The Clerk of Court shall substitute Robert Patton, Director, as party respondent in this case.

2.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this matter.

**DATED** this 4th day of March, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT